USA v. Iovino

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2014

(Argued: January 13, 2015          Decided: February 2, 2015)

Docket No. 14-270

————————

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

PETER IOVINO,

*Defendant-Appellant.*

————————

Before:

KATZMANN, *Chief Judge*, KEARSE and RAGGI, *Circuit Judges*.

————————

Appeal from a judgment of conviction entered in the United States District Court for the Southern District of New York (Vincent L. Briccetti, *J.*), which sentenced the defendant principally to 60 months' imprisonment. We conclude that the district court properly applied the four-level Sentencing Guidelines enhancement for crimes involving more than fifty victims, because Iovino defrauded a condominium association whose 70-odd members were consequently required to pay higher common charges. Accordingly, the judgment of the district court is **AFFIRMED**.

——————————

ANDREW BAUER (Justin Anderson, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York, *for Appellee*.

JEREMY GUTMAN, New York, New York, *for Defendant-Appellant*.

——————————

PER CURIAM:

This case calls on us to clarify how sentencing courts should count the number of victims of a fraud when deciding whether to apply a multiple-victim enhancement under section 2B1.1(b)(2) of the U.S. Sentencing Guidelines. Appellant Peter Iovino appeals from a judgment of conviction entered on January 6, 2014 by the United States District Court for the Southern District of New York (Briccetti, *J.*). Iovino, who was employed as the property manager of a condominium association, was charged with one count of wire fraud for

2

embezzling funds from the condominium association and one count of bank fraud for taking out an unauthorized loan in the condominium association's name. Iovino pleaded guilty to both counts, and was principally sentenced to 60 months' imprisonment.

On appeal, Iovino contends that the district court miscalculated his Sentencing Guidelines range when it increased his offense level by four levels pursuant to United States Sentencing Guidelines § 2B1.1(b)(2)(B), which applies to offenses that "involve[] 50 or more victims." Iovino argues that the district court erred by finding that each owner of a unit in the condominium (hereinafter "tenant") qualified as a victim, rather than just the condominium association itself.

Because we conclude that the district court properly counted the individual tenants as victims, and therefore properly applied the § 2B1.1(b)(2)(B) enhancement, we AFFIRM the judgment and sentence of the district court.

## I. BACKGROUND

Beginning in 2000, Peter Iovino was employed as the property manager of the Bedford Terrace Condominium Association ("Bedford Terrace"), which is

occupied by more than 70 tenants.  As property manager, Iovino was responsible

for paying Bedford Terrace's vendors, managing its finances, and reporting to

the association's Board of Managers at the Board's monthly meetings.  Although

Iovino had access to Bedford Terrace's bank accounts, he was not allowed to

withdraw funds without the signed approval of at least two Board members.

In 2011, the Board discovered that Iovino had taken out an unauthorized

loan in the name of Bedford Terrace.  Further investigation revealed that Iovino

had also made several unauthorized withdrawals from Bedford Terrace's bank

accounts.  Iovino concealed his withdrawals by providing the Board with forged

bank statements that hid the true balance of the accounts.

Iovino was charged with a single count of wire fraud, based on his

unauthorized withdrawals from the Bedford Terrace bank accounts, and a single

count of bank fraud, based on the unauthorized loan.  On January 16, 2013,

Iovino pleaded guilty to both counts.

As relevant here, the district court quantified the loss caused by Iovino's

illicit withdrawals from the Bedford Terrace accounts as $139,292.00.  At a *Fatico*

hearing, the district court heard testimony from the president of Bedford

4

Terrace's Board of Managers, who explained that the bank accounts from which Iovino had stolen were funded by the common charges paid by the tenants of the condominium association. The Board president further testified that, after Iovino's fraud was uncovered, Bedford Terrace raised its common charges by roughly $100 per month in order to replenish the accounts depleted by Iovino's fraud. Based on this testimony, the district court found that each of the tenants of Bedford Terrace had been a victim of Iovino's fraud because each was forced to pay these higher common charges as a result of the theft from the Bedford Terrace bank accounts. Accordingly, the district court increased Iovino's offense level by four levels pursuant to United States Sentencing Guidelines § 2B1.1(b)(2)(B), which applies to offenses that "involve[] 50 or more victims."

## II. DISCUSSION

Iovino's sole argument on appeal is that the district court erred by counting each of the individual tenants of Bedford Terrace as a separate victim of his fraud. Because Iovino's argument depends on the Sentencing Guidelines' definition of "victim," we begin by reviewing the interlocking provisions of the Guidelines. Section 2B1.1(b)(2)(B) of the Sentencing Guidelines instructs

5

sentencing courts to increase a defendant's offense level by four levels when the offense "involved 50 or more victims." Application note 1 to § 2B1.1 defines "victim" as, *inter alia*, "any person who sustained any part of the actual loss determined under subsection (b)(1)." "[S]ubsection (b)(1)," in turn, refers to the provision of the Sentencing Guidelines that charges sentencing courts with calculating the loss caused by the defendant's crime, and setting the offense level accordingly.[1]

Because a victim must have sustained part of the "actual loss determined under subsection (b)(1)," U.S. Sentencing Guidelines Manual § 2B1.1 cmt. n.1, we have previously held that a victim must have suffered some part of the loss actually calculated by the district court. In *United States v. Abiodun*, 536 F.3d 162 (2d Cir. 2008), the defendant pleaded guilty to defrauding hundreds of individuals by obtaining credit card advances in their names. Although in most cases the individuals suffered no direct financial loss because they were reimbursed by their banks, the district court nonetheless counted them as victims because they "had spent an appreciable amount of time securing reimbursement

---

[1] The "loss" is calculated as "the greater of actual loss or intended loss."

6

for their financial losses." *Id.* at 166.  On appeal, we vacated and remanded, holding that these individuals had not been properly counted as victims.  *Id.* at 169.  Although the lost time was cognizable as a loss under the Sentencing Guidelines, the district court had not quantified the monetary value of this lost time when calculating the "actual loss" caused by the fraud. *See id.* at 169.  Instead, the district court had focused solely on the total value of the fraudulent credit card advances procured by the defendant.  *See id.* at 165.  Because the lost time was not "part of the actual loss determined under subsection (b)(1)," U.S. Sentencing Guidelines Manual  § 2B1.1 cmt. n.1, we held that the individual account-holders were not victims as defined by the Sentencing Guidelines. *Abiodun*, 536 F.3d at 169.

Similarly, in *United States v. Skys*, 637 F.3d 146 (2d Cir. 2011), the defendant unsuccessfully attempted to defraud several banks by falsely representing that his business owned substantial assets, and by seeking to take out an 83 million dollar loan secured against those assets.  The defendant was charged with securities, bank, and wire fraud after his deception was discovered.  At sentencing, the

U.S. Sentencing Guidelines Manual  § 2B1.1 cmt. n.3(A).

7

district court considered evidence that the defendant had also perpetrated several other, uncharged frauds. The district court calculated the "intended loss" of the fraud as $83 million, the size of the loan the defendant attempted to procure from Citigroup; the district court did not calculate the "actual loss" caused by the defendant's various frauds. *See id.* at 153—55. Nonetheless, the district court counted both the banks and the targets of the uncharged frauds as victims under the Sentencing Guidelines. *Id.*

Again, we remanded. Citing *Abiodun*, we explained that "'victims,' within the meaning of subsection (b)(2), are only those persons or entities who sustained 'actual loss determined' by the court 'under subsection (b)(1).'" *Id.* at 153. Because the district court had not calculated the actual loss caused by the defendant's schemes, the banks and targets of the uncharged frauds could not have suffered a "part of the actual loss determined under subsection (b)(1)." *Id.* at 154-55. Accordingly, we remanded to the district court to calculate the actual loss caused by the defendant's frauds and, if necessary, to recount the number of victims who had suffered part of this actual loss. *Id.* at 155—56.

Relying on *Abiodun* and *Skys*, Iovino argues that the district court erred by counting the individual tenants of Bedford Terrace as victims. As relevant here, the district court calculated that the actual loss caused by Iovino's theft was $139,292.00, the amount that Iovino withdrew from the condominium association's bank accounts. Because this amount was taken from Bedford Terrace's accounts, Iovino contends that the only person or entity that "sustained . . . part of the actual loss determined" by the district court was Bedford Terrace itself. Although Iovino acknowledges that the individual tenants had to pay higher common charges as a result of his theft, he argues that these higher common charges were not included in the actual loss calculated by the district court. Accordingly, he reasons, the individual tenants do not qualify as victims under the reasoning of *Abiodun* and *Skys*.

Iovino's argument is without merit. The district court found—and Iovino does not dispute—that Bedford Terrace increased its common charges because it needed to "replenish" the bank accounts depleted by Iovino's fraud. Appellant's App. 72. The individual tenants therefore sustained actual, out-of-pocket losses when they were required to pay these higher charges as a result of Iovino's fraud.

9

Moreover, these losses were "part of the actual loss determined under subsection (b)(1)" because, as the district court found, the higher common charges directly replaced the funds that Iovino had stolen from the condominium association's bank accounts.

This case is thus distinguishable from *Abiodun* and *Skys*, both of which involved victims who had suffered "losses" entirely separate from the losses that the district court "determined under subsection (b)(1)." In *Abiodun*, the district court focused on the strictly financial loss caused by the defendants' fraud. But it did not include in its calculation the monetary value of the time the individuals expended to secure reimbursement from the banks. Had it done so, adding the value of the individuals' lost time would have increased the total actual loss, and the individual victims would therefore have qualified as victims. And the district court in *Skys* did not calculate any actual loss at all, instead relying solely on the "intended loss" of the defendant's scheme.

Here, by contrast, Iovino concedes, as he must, that the district court correctly totaled the actual loss as $139,292.00, the amount that Iovino stole from the Bedford Terrace accounts. The individual tenants paid higher common

10

charges to replenish these accounts. But this replenishment does not change the "actual loss" caused by Iovino's fraud. Instead, every dollar paid by a tenant in the form of higher common charges was one dollar reimbursed to Bedford Terrace. As such, the total loss—the sum of the increased common charges paid by the individual tenants and the loss absorbed by Bedford Terrace to the extent that the tenants have not fully replenished the accounts—remains $139,292.00. And while Iovino is right that the district court did not calculate this amount by totaling up the higher common charges paid by the individual tenants, the district court nonetheless correctly measured the loss collectively sustained by Bedford Terrace and the individual tenants.

Because it is undisputed that the tenants paid higher common charges to replenish the association's depleted bank accounts, the individual tenants "sustained [a] part of the actual loss determined under subsection (b)(1)," and were properly counted as victims.[2] Accordingly, the judgment and sentence of the district court are hereby **AFFIRMED**.

[2] The government urges us to find that the individual tenants qualify as victims because they suffered a loss based on their shared interest in the money Iovino stole from the Bedford Terrace bank accounts. Because the tenants here

11

sustained direct, out-of-pocket losses when they were forced to pay higher common charges, we do not reach this argument.